UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **AMERISURE INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Cause No. 1:09-cv-866-WTL-DKL |
| ) | |
| **SCOTTSDALE INSURANCE COMPANY,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are several motions for summary judgment: (1) Amerisure Insurance Company's motion against Scottsdale Insurance Company (Docket No. 116); (2) National Surety Corporation's motion against Scottsdale Insurance Company (Docket No. 119); (3) Scottsdale Insurance Company's motion against National Surety Corporation (Docket No. 124); and (4) Scottsdale Insurance Company's motion against Amerisure Insurance Company (Docket No. 127).[1] These motions are fully briefed, and the Court, being duly advised, now rules as follows.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476

---

[1] Scottsdale also moved to strike Amerisure's and National Surety's surreplies (Docket No. 162). This motion is **DENIED**. In ruling on the parties' motions the Court has considered all of the briefs and the admissible evidence.

F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

In November 2005, Indiana Steel Fabricating, Inc. ("ISF") submitted a bid to Mark Swanson Associates, Inc. ("Swanson") to perform steel fabrication work for an Indiana Veneers Corp. ("Indiana Veneers") construction project (the "Project"). In October 2006, ISF entered into a subcontract agreement (the "Subcontract") with Central Steel Erectors, Inc. ("Central Steel") whereby Central Steel was to perform steel erection for the Project.

The Subcontract included a clause stating:

Prior to starting the Work, the Subcontractor [Central Steel] shall furnish satisfactory evidence to [ISF] . . . that [Central Steel] has insurance as required by the Contract Documents. All such insurance . . . shall name [ISF], [Indiana Veneers], and [Swanson] as additional insured parties, and shall provide primary insurance coverage for all claims and losses against [ISF], [Indiana Veneers], and [Swanson], including, but not limited to, those claims that arise out of injuries to the employees of [Central Steel] or injuries to third parties which occur during the performance of this agreement, or as a result of [Central Steel's] performance. Any coverage provided by [ISF] shall be excess coverage.

[Central Steel] agrees to defend, indemnify, and hold harmless [ISF], [Indiana Veneers], [Swanson] and their respective agents and representative from and against all claims, actions, judgments, damages, losses and expenses . . . which they may suffer or incur arising out of or in any way connected with the Work to

2

>be performed by [Central Steel] under this Agreement . . . whether caused in
>whole or in part by the negligent or other wrongful act or omission of [Central
>Steel], or of anyone directly or indirectly employed by [Central Steel], or of
>anyone for whose acts or omissions [Central Steel] may be held responsible,
>except to the extent caused solely by the gross negligence or willful misconduct
>of [ISF].

Docket No. 1 Ex. 5 at 2.

Central Steel obtained a $1 million commercial general liability ("CGL") policy from Scottsdale Insurance Co. ("Scottsdale"). The Scottsdale CGL policy includes an endorsement providing:

> **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>     **1.**    Your acts or omissions; or
>     **2.**    The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the additional insured.

Docket No. 14 Ex. 1 at 17. Central Steel also obtained a $2 million umbrella insurance policy from Scottsdale.

ISF had its own CGL and umbrella policies, issued by Amerisure Insurance Co. ("Amerisure") and National Surety Corp. ("National Surety"), respectively.[2]

In November 2006, one of Central Steel's employees, Brian Colip, was seriously injured when he fell thirty feet through a hole in the roof of the building where he was working. In February 2007, Colip filed suit (the "Colip Action") in Indiana state court against ISF and

---

[2] The Amerisure CGL policy has a $1 million limit and the National Surety umbrella policy has a $7 million limit.

Swanson.[3] Initially, Amerisure defended ISF in the Colip Action pursuant to its CGL policy. However, in August 2007, Scottsdale accepted ISF's tender of defense and indemnification and took over ISF's defense under the Scottsdale CGL policy. Amerisure's attorneys then withdrew.

Throughout the Colip Action, Colip maintained that ISF owed him a non-delegable duty of care and thus was vicariously liable for Central Steel's failure to provide for his safety on the Project. The parties to the Colip Action filed cross-motions for summary judgment.[4] The state court granted Swanson's motion for summary judgment, denied ISF's motion for summary judgment, and granted Colip's partial motion for summary judgment, ruling that ISF owed Colip a non-delegable duty of care. Colip and ISF then proceeded through two unsuccessful rounds of mediation before the state court ordered the insurers to attend coverage-only mediation.

The coverage-only mediation was not successful. However, the insurers did eventually agree to settle the Colip Action for $2.9 million. To that end, Central Steel, Scottsdale, ISF, Amerisure, and National Surety entered into a settlement funding agreement (the "Agreement"), which provided that after the Colip Action was settled and dismissed the parties would file a declaratory judgment action[5] in this Court to determine their respective rights and obligations.

---

[3] Colip originally named Deboy Land Development Services, Inc., as a defendant in the state court suit; however, he ultimately dismissed his claims against them.

[4] ISF and Swanson moved for summary judgment, arguing that they did not owe Colip a duty of care. In response, Colip moved for partial summary judgment against ISF on the grounds that ISF had a non-delegable safety duty on the Project and was vicariously liable for Central Steel's negligence.

[5] Although the parties refer to this case as a declaratory judgment action, it seems to the Court more appropriately viewed as an action for (equitable) contribution. How the case is labeled is irrelevant, however, as the Court considers the substance of the pleadings (and the relief sought), not their title or form, *Bunn v. Conley*, 309 F.3d 1002, 1010 (7th Cir. 2002), and there is clearly a ripe claim and controversy to be resolved among the parties.

The Agreement provided that the $2.9 million settlement would, in the meantime, be paid by the following contributions: (1) the $1 million policy limit of the Scottsdale CGL policy; (2) $950,000 of the Scottsdale umbrella policy; and (3) $950,000 of the Amerisure CGL policy.

In July 2009, Amerisure filed this action against Central Steel, Scottsdale, and National Surety seeking a determination of each party's financial responsibility for the funds contributed under the Agreement as well as reimbursement of its $950,000 contribution under the Agreement. Scottsdale counterclaimed against Amerisure and cross-claimed against National Surety. In March 2010, the Court dismissed Central Steel. Thus, the only parties remaining are Scottsdale, National Surety, and Amerisure, who have all filed motions for summary judgment.

### III. DISCUSSION

It has long been held that "the proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)). Provisions of insurance contracts are subject to the same rules of construction as other contracts. The Court interprets an insurance contract with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004). To accomplish that goal, the Court must construe the policy as a whole, rather than considering individual words, phrases, or paragraphs. *Id*. A clear and unambiguous insurance policy is "given its plain and ordinary meaning." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985) (citation omitted), *cert. denied* 479 U.S. 1060 (1987). If the insurance contract is ambiguous then it is typically construed against the insurer and in favor of the insured. *See Taylor v. Am. Underwriters, Inc.*,

5

352 N.E.2d 86, 89 (Ind. Ct. App. 1976). However, when the dispute is between an insurance company and a third party (or between two insurance companies), the policy is construed from a neutral stance. *Ind. Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973) ("[W]e are in fact in this instance not dealing with the two parties to the contract. The party claiming to be an insured in this case never paid a penny's premium to the insurer. We are therefore not in a situation where we must construe the contract language any certain way and can seek out the general intent of the contract from a neutral stance."); *see also Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000). This is one of those situations – the Court is not presented with a dispute between insurer and insured, but instead is faced with a dispute between an insurer and a third party (another insurer). Accordingly, the policies must be construed from a neutral stance.

Scottsdale's primary argument is that its umbrella policy does not cover ISF for the Colip Action because the umbrella policy includes a cross liability exclusion that states: "This insurance does not apply to -bodily injury,- -property damage- or -personal and advertising injury- arising out of any claim or -suit- brought by any insured against another insured." Docket No. 14 Ex. 2 at 35. According to Scottsdale, the Colip Action was brought by an insured (Colip) against another insured (ISF); therefore, the cross liability exclusion applies to bar coverage.

In response, both Amerisure and National Surety argue that Scottsdale's assertion of the cross liability exclusion is an impermissible attempt to "mend its hold." The "mend the hold" doctrine "is the name of a common law doctrine that limits the right of a party to a contract suit to change his litigating position." *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362 (7th

6

Cir. 1990). As Judge Posner explained in *Harbor Insurance*, "the phrase is a nineteenth-century wrestling term, meaning to get a better grip (hold) on your opponent." *Id*. "[T]he doctrine itself, appropriately configured . . . , can be seen as a corollary of the duty of good faith that the law . . . imposes on the parties to contracts." *Id*. at 363. "A party who hokes up a phony defense to the performance of his contractual duties and then when that defense fails (at some expense to the other party) tries on another defense for size can properly be said to be acting in bad faith." *Id*.

In *Harbor Insurance*, the insurers filed a declaratory judgment action seeking a determination that they were not liable under a directors' and officers' insurance policy issued to Continental because "the behavior of the directors had been so egregious that . . . federal and state law would forbid Continental to indemnify the directors for any liability they incurred as a result of that conduct." *Id*. at 359. Ultimately, Continental settled the underlying securities case for $17.5 million and then filed a counterclaim against its insurers seeking reimbursement. "Later in the same litigation, in defending against the counterclaim, the insurance companies changed course 180 degrees, arguing that the reason they were not liable to Continental was that the directors had never been shown to have committed any wrongful acts exposing them to liability." *Id*. at 363. At trial, Continental sought to introduce the declaratory judgment complaint into evidence. The district court excluded the document and the jury returned a verdict for the insurers. On appeal, the Seventh Circuit, applying Illinois law, concluded that the complaint was relevant to Continental's argument that the insurers' present position was "dishonest and unfounded" and therefore should have been admitted into evidence, so it remanded the case for a new trial during which the change in argument issue was to be presented to the jury. *Id.* at 362, 365.

7

Amerisure and National Surety argue that Scottsdale knew that "Colip was an employee of Central [Steel], Colip sustained his injuries as a Central [Steel] employee, and that ISF was an insured under the Scottsdale Umbrella Policy" in June 2008 when Scottsdale issued a letter reserving its right to assert all defenses to coverage available to it under the umbrella policy. Docket No. 149 at 12. Amerisure and National Surety emphasize that in the June 2008 letter, Scottsdale identified (and quoted) portions of the umbrella policy, including several policy exclusions; however, Scottsdale never mentioned the cross liability exclusion. Moreover, Amerisure and National Surety point to the "statement of claims" portion of the case management plan ("CMP") in this case in which Scottsdale stated:

> Scottsdale is entitled to a determination that the Amerisure Primary Policy must exhaust prior to the Scottsdale Umbrella Policy being triggered. Furthermore, Scottsdale is entitled to a determination that the indemnity clause contained in the Subcontract is void and unenforceable because it requires Central Steel to indemnify ISF for ISF's own negligence and violates Indiana Code §26-2-5-1 which mandates that such agreements are void and unenforceable[.] In addition, Scottsdale is entitled to a determination that any portion of the Underlying Settlement in excess of the limits of the Scottsdale and Amerisure Primary policies must be equitably allocated as between the Scottsdale and National Surety Umbrella Policies. Finally, neither Central Steel (nor Scottsdale) have breached any provisions of the Subcontract.

Docket No. 45 at 5.

According to Amerisure and National Surety, because there was no mention of the cross liability exclusion in the CMP (or in the pre-litigation correspondence), allowing Scottsdale to now assert that the cross liability exclusion applies would permit Scottsdale to "completely reverse[] its position by claiming that the Scottsdale Umbrella Policy was never triggered because coverage was excluded, and that there is no allocation between the Scottsdale Umbrella Policy and National Surety Umbrella Policy." Docket No. 149 at 14.

As an initial matter, the Court notes that it is not entirely clear whether Indiana recognizes the mend the hold doctrine. The only Indiana case even mentioning the doctrine – *National Hame & Chain Co. v. Robertson*, 161 N.E. 851 (Ind. Ct. App. 1928) – was decided over eighty years ago. *See also Governmental Interinsurance Exch. v. City of Angola, Ind.*, 8 F. Supp. 2d 1120, 1129 (N.D. Ind. 1998) (noting that there are no Indiana decisions referring directly to the mend the hold doctrine in the insurance context and pointing out that the reach of the doctrine is uncertain). Moreover, the Court believes that *National Hame* is not analogous to the instant case and thus is of little use.

The Court's own research reveals that there are only a handful of states that have recognized the mend the hold doctrine. Of those states, the case law discussing the doctrine is most developed in Illinois, where the mend the hold doctrine applies in the insurance context to "'preclude[] insurers from denying a claim on one basis and then changing the basis for denial *during litigation*.'" *Grinnell Mut. Reinsurance Co. v. LaForge*, 863 N.E.2d 1132, 1140 (Ill. App. Ct. 2006) (emphasis in original) (quoting *Liberty Mut. Ins. Co. v. Am. Home Assurance Co.*, 858 N.E.2d 530, 539 (Ill. App. Ct. 2006)). In addition, Illinois does not apply the doctrine "in the absence of detriment to the party seeking its application, unfair surprise, or arbitrariness." *Id.* at 1141; *see also Liberty Mutual*, 858 N.E.2d at 539-40 (refusing to apply the mend the hold doctrine when insurer did not change its position and where the party raising the doctrine failed to demonstrate that it was surprised or prejudiced by the insurer's conduct).

Assuming that the mend the hold doctrine is recognized in Indiana, the Court believes that Indiana would apply the doctrine in the same manner as it is applied in Illinois. In other words, the Court believes that Indiana would require both that an insurer change its position <u>and</u>

9

that the party asserting the mend the hold doctrine demonstrate prejudice, detriment, unfair surprise, or arbitrariness. Here, the second prong dooms Amerisure and National Surety. Amerisure has neither alleged nor demonstrated any prejudice from Scottsdale's arguably late assertion of the cross liability exclusion. Although National Surety's briefs make vague allegations of prejudice resulting from Scottsdale's tardy assertion of the cross liability exclusion, *see* Docket No. 151 at 8-9; Docket No. 160 at 9, National Surety's allegations are not supported by any admissible evidence.[6] *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1379 n.5 (7th Cir. 1985) (stating that "arguments in briefs are not evidence."). Accordingly, they are not sufficient to establish a question of fact on this issue. Because neither Amerisure nor National Surety have established that they were prejudiced by Scottsdale's conduct, even assuming that Indiana recognizes the mend the hold doctrine, it is inapplicable in this situation.

Having resolved the mend the hold issue, the Court now turns to the substance of the cross liability exclusion. The Scottsdale umbrella policy states: "Each of the following is also an insured: (1) . . . your 'employees,' other than either your 'executive officers' . . . or your managers . . . , but only for acts within the scope of their employment by you or while

---

[6] Similarly, National Surety alleges that both waiver and estoppel bar Scottsdale from relying on the cross liability exclusion. "'[W]aiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment.'" *Tate v. Secura Ins.*, 587 N.E.2d 665, 671 (Ind. 1992) (quoting *Travelers Ins. Co. v. Eviston*, 37 N.E.2d 310, 314 (Ind. Ct. App. 1941)). Here, there is nothing in the record indicating that Scottsdale waived its right to rely on the cross liability exclusion. To the extent that National Surety is asserting <u>implied</u> waiver, in the insurance context that doctrine is treated as identical to estoppel. *Id.* With respect to both implied waiver and estoppel, "prejudice to the insured by the insurer's failure to deny coverage is necessary." *Johnson v. Payne*, 549 N.E.2d 48, 53 (Ind. Ct. App. 1990). Because National Surety has not introduced any evidence of prejudice, its waiver and estoppel arguments fail as a matter of law.

performing duties related to the conduct of your business." Docket No. 14 Ex. 2 at 9. According to Scottsdale, "[i]t is undisputed that Brian Colip, the plaintiff in the Colip Action, was an employee of Scottsdale's named insured, Central [Steel]." Docket No. 147 at 20. "It is further undisputed that, at the time Mr. Colip sustained the bodily injuries which were the subject of the Colip Action, Mr. Colip was working at the Indiana Veneers project as a Central [Steel] employee." *Id*. at 20-21. Thus, Colip is an insured under the Scottsdale umbrella policy. Neither Amerisure nor National Surety dispute this conclusion.

The Scottsdale umbrella policy also states: "Any additional insured under any policy of 'underlying insurance' will automatically be an insured under this insurance." Docket No. 14 Ex. 2 at 10. Scottsdale notes that "[i]t is also undisputed that ISF, the defendant to the Colip Action for which coverage is at issue herein, was an insured under the Scottsdale Umbrella Policy, pursuant to the operation of the additional insured provisions." *Id*. at 21. According to Scottsdale, this means that the cross liability exclusion, which provides: "This insurance does not apply to -bodily injury,- -property damage- or -personal and advertising injury- arising out of any claim or -suit- brought by any insured against another insured," Docket No. 14 Ex. 2 at 35, applies.

Not surprisingly, Amerisure and National Surety dispute this conclusion. They allege that the cases Scottsdale cites in support of its position are not analogous to the instant case and that "[b]y its own terms, the Scottsdale Umbrella Policy's Cross Liability Exclusion only applies to preclude coverage if 'bodily injury,' 'property damage' or 'personal and advertising injury' (as those terms are defined by the Scottsdale Umbrella Policy) arises out of a claim or 'suit' brought by any insured against another insured." Docket No. 149 at 22. They then argue that

11

under Indiana law, "arising out of" means "the 'efficient and predominating cause' of an injury requiring more than a minimal or incidental connection." *Id*. (quoting *Ind. Lumbermens*, 291 N.E.2d at 899). In short, according to Amerisure and National Surety, "the Cross Liability Exclusion only applies if 'bodily injury' 'arises out of' a claim or suit brought by an insured against another insured" and here "no such 'bodily injury' caused by a claim or suit exists, and therefore the Exclusion does not bar coverage." *Id*. at 29.

If this were a case where the Court was obligated to strictly construe the policy language against the drafter, Scottsdale, then the argument advanced by National Surety and Amerisure would be quite persuasive. However, as previously noted, this is a dispute between insurance companies, so the Scottsdale umbrella policy is construed from a neutral stance. *See Ind. Lumbermens*, 291 N.E.2d at 899 (Ind. 1973); *Burkett*, 737 N.E.2d at 452. With this standard in mind, the Court concludes that, although inexpertly drafted, the cross liability exclusion was intended to apply to exclude coverage for precisely this situation. Reading the insurance policy in a manner that harmonizes the provisions, it is clear that the umbrella policy was never intended to apply to a situation in which one insured (Colip) sued another insured – be it Central Steel or ISF. Accordingly, the cross liability exclusion in the Scottsdale umbrella policy clearly precludes coverage for the Colip Action.

There is one remaining wrinkle. Scottsdale argues, correctly, that because the cross liability exclusion applies it had no obligation to make the $950,000 payment under its umbrella policy to settle the Colip Action. Accordingly, Scottsdale asserts that it is entitled to full reimbursement with the first $50,000 coming from the Amerisure CGL policy, which has already paid out $950,000. Because the Amerisure policy has a $1 million limit, it will exhaust after

reimbursing Scottsdale $50,000, thus, National Surety, ISF's umbrella insurer, is responsible for the remaining $900,000. However, as National Surety notes, in its pleadings Scottsdale sought only $500,000 in reimbursement; $50,000 from Amerisure in its counterclaim and $450,000 from National Surety in its Amended Cross-Claim (the "Cross-Claim"). According to National Surety, because this is the only dollar amount mentioned in the Cross-Claim, Scottsdale is not entitled to now recover $900,000 from it. In support of this position, National Surety cites several Seventh Circuit cases that stand for the proposition that "a party cannot amend a complaint with a later-filed brief on summary judgment." Docket No. 151 at 12 (citing *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)).

Scottsdale asserts that it has consistently demanded reimbursement of its full $950,000 contribution and claims that the $450,000 figure in its Cross-Claim was nothing more than a "scrivner's error." In support of this argument Scottsdale points to other paragraphs in its Cross-Claim that state: "The amount paid by Scottsdale from the Scottsdale Umbrella policy were [sic] wholly owed or in part by National Surety. Therefore, Scottsdale has demanded that National Surety reimburse Scottsdale," Docket No. 48 ¶ 26; "Scottsdale is entitled to recover, as matter of equity, amounts it has paid from the Scottsdale Umbrella Policy in settlement payments on behalf of ISF to settle the Colip Action," *id.* ¶ 27; and in its prayer for relief Scottsdale requested that the Court "order that Scottsdale recover the damages incurred by Scottsdale from Scottsdale's Umbrella Policy, including settlement payments, as paid by Scottsdale on behalf of ISF in the Colip Action" and "[t]hat the Court declare that Scottsdale is entitled to reimbursement from National Surety of settlement payments paid from the Scottsdale Umbrella Policy on ISF's behalf." *Id*. at 9.

Scottsdale also notes that its Statement of Special Damages (Docket No. 71), which was filed in early 2010, states that Scottsdale "seeks recovery of Nine Hundred Fifty Thousand and No Cents Dollars ($950,000) it contributed to the settlement of the underlying litigation . . . plus prejudgment interest at eight percent (8%) per annum." Docket No. 71 at 1-2. Scottsdale asserts that this should have put both Amerisure and National Surety on notice that Scottsdale was seeking full reimbursement.

National Surety is correct that Seventh Circuit case law prohibits amending a pleading via a summary judgment brief. However, the cases that National Surety cites, as well as the other case law on this issue, are distinguishable from the case at bar. In all of the cases in which the Seventh Circuit has declined to allow a party to advance a new legal theory at the summary judgment stage, the party's complaint clearly omitted the legal theory. However, in this case, although the Court agrees that Scottsdale's Cross-Complaint is not the pinnacle of clarity, the Federal Rules of Civil Procedure only require notice pleading, and "a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citations and internal quotation marks omitted). Absent the inclusion of the $450,000 figure, the language in Scottsdale's Cross-Claim clearly was broad enough to put National Surety on notice that Scottsdale was seeking reimbursement of <u>all</u> amounts paid out under the Scottsdale Umbrella Policy. Moreover, once Scottsdale filed its Statement of Special Damages, National Surety was on notice that Scottsdale was seeking full reimbursement, which translated to $900,000 from National Surety. The $450,000 figure is truly just a number. The Court does

14

not believe that Scottsdale is impermissibly attempting to amend its Cross-Claim via its summary judgment briefs. Given the facts of this case, it is simply not inequitable to permit Scottsdale to recover the full $950,000 it paid under its umbrella policy to settle the Colip Action. Accordingly, Scottsdale is entitled to recover $50,000 from Amerisure and $900,000 from National Surety.[7]

The parties raise various other arguments in support of their motions for summary judgment. Although the Court has reviewed these arguments, it is the Court's opinion that this case ultimately turns on the applicability of the cross liability exclusion. Having concluded that the cross liability exclusion applies and renders the Scottsdale umbrella policy inapplicable, the Court need not address these other arguments herein.

## **CONCLUSION**

For the foregoing reasons, Amerisure's Motion for Summary Judgment (Docket No. 116) and National Surety's Motion for Summary Judgment (Docket No. 119) are both **DENIED**. Scottsdale's Motions for Summary Judgment (Docket Nos. 124 & 127 ) are **GRANTED**. Before the Court can calculate the appropriate amount of damages and enter final judgment in this case the parties must address the prejudgment interest issue. Accordingly, the parties are ordered to confer and attempt to reach an agreement regarding prejudgment interest. In the event that the parties are unable to agree about this issue, the parties shall file briefs discussing the proper calculation and allocation of prejudgment interest according to the following schedule: Scottsdale's opening brief is due before **July 6, 2011**; responses from Amerisure and National Surety are due before **July 20, 2011**; any reply brief is due before **July 27, 2011**.

---

[7] Scottsdale has also requested prejudgment interest. However, the parties failed to address both the calculation and allocation of prejudgment interest in their briefs, so the Court is presently unable to resolve that issue.

15

SO ORDERED: 06/15/2011

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Eldon Edson
Selman Breitman, LLP
eedson@selmanbreitman.com

Derek Leonard Mandel
Mandel Horn McGrath & Reynolds, P.C.
dmandel@mhmrlaw.com

Stephen J. Peters
Harrison & Moberly
speters@h-mlaw.com

Jan L. Pocaterra
Selman Breitman, LLP
jpocaterra@selmanbreitman.com

Laura Sue Reed
Riley Bennett & Egloff LLP
lreed@rbelaw.com

David I. Rubin
Harrison & Moberly
drubin@h-mlaw.com